# No. 24-20286

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Jose E. Amstutz,

Plaintiff - Appellant

v.

Harris County; Sylvia Trevino, Precinct 6 Constable,

Defendants – Appellees

### On Appeal from
United States District Court for the Southern District of Texas

4:23-CV-1787

## REPLY BRIEF OF APPELLANT JOSE AMSTUTZ

SUBMITTED BY:

Laurence Wade Watts
Watts & Company Lawyers, Limited
5002 Sienna Parkway
P.O. Box 2214
Missouri City, TX 77459

# TABLE OF CONTENTS

Contents                                                              Page(s)

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES..........................................................1

ARGUMENT ....................................................................4

CONCLUSION ..................................................................23

CERTIFICATE OF SERVICE.......................................................25

CERTIFICATE OF COMPLIANCE ...................................................26

# TABLE OF AUTHORITIES

**Cases**……………………………………………………………….……**Pages(s)**

*Anderson v. Harris Cnty*.,

  98 F.4th 641 (5th Cir. 2024) ..................................................12, 13, 18

*Bowden v. Jefferson Cnty.*,

  676 Fed. Appx. 251 (5th Cir. 2017)....................................................17

*City of Canton v. Harris*,

  489 U.S. 378, 390 (1989)....................................................................20

*St. Louis v. Praprotnik*,

  485 U.S. 112 (1988)....................................................11, 12, 14, 17, 19

*Cleveland Bd. of Educ. v. Loudermill*,

  470 U.S. 532 (1985) .............................................................................9

*Fed. Express Corp. v. Holowecki*,

  552 U.S. 389, 402 (2008) .....................................................................4

*Fellows v. Universal Rests., Inc*.,

  701 F.2d 447, 451 (5th Cir. 1983).........................................................4

*FDIC v. Conner*,

  20 F.3d 1376, 1385 (5th Cir. 1994).......................................................5

*Galvan v. Bexar County*

  785 F.2d 1298, 1305 (5th Cir. 1986)..................................................5, 6

*Harris Cnty. v. Nagel*,

  349 S.W.3d 769, 793 (Tex. App.—Houston [14th Dist.]

  2011, pet. denied)...................................................................11, 13, 15

1

*Harris Cnty. v. Coats*,

>607 S.W.3d 359, (Tex. App.—Houston [14th Dist.] 2020, no pet.)

>(Bourliot, J., dissenting)....................................................11, 14, 15, 16

*Jett v. Dallas Independent School Dist.*,

>491 U.S. 701, 737 (1989)...........................................................12, 17

*McMillian v. Monroe County*,

>520 U.S. 781, 786 (1997)...........................................................12, 17

*Monell v. Dep't of Soc. Servs.*,

>436 U.S. 658, 690-91 (1978)...........................................................20

*Pacheco v. Mineta*,

>448 F.3d 783, 788 (5th Cir. 2006)....................................................4, 5

*Patel v. Trevino*,

>2022 Tex. App. LEXIS 6494, 40-43 (Tex. App.—Houston [1st Dist.]

>2022, no pet.) .....................................................................................10

*Pembaur v. Cincinnati*,

>475 U.S. 469, 483 (1986)......................................................12, 14, 17

*Perry v. Sindermann*,

>408 U.S. 593, 601 (1972)..............................................................7, 10

*Rhode v. Denson*,

>776 F.2d 107, 109 (5th Cir. 1985).......................................................13

*Webster v. City of Houston*

>735 F.2d 838 (5th Cir. 1984) (en banc)..............................................13

*Williams v. United States,*

>405 F.2d 234, 236-37 (5th Cir. 1968) ...................................................6

**Statutes………………………………………………………………..……Pages(s)**

Federal Rule of Civil Procedure 15(c)(1)(B) ...................................5, 6, 21, 23

Tex. Const. Art. V. § 18 ..................................................................................15

Tex. Health & Safety Code § 573.012 ...........................................................16

Tex. Local Gov't Code § 86.011(c) ...................................................11, 14, 17

Tex. Local Gov't Code § 151.001-003 ..............................................11, 14, 17

# ARGUMENT

## I.     ADEA Claims

### A. Appellant *Properly* Exhausted Administrative Remedies

Appellees' argument regarding exhaustion of administrative remedies fundamentally misunderstands the purpose and requirements of EEOC charges. While they correctly note that the factual portion of Appellant's EEOC charge must be examined, they apply an overly rigid and technical reading that contradicts Supreme Court and Fifth Circuit precedent.

First, Appellees ignore that the Supreme Court has consistently held that EEOC charges should be construed liberally, since they are often completed and filed by lay persons unschooled in technical pleading requirements. See, *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008), *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). Appellant's charge contained the essential elements required: he checked the "age" discrimination box and included his date of birth, providing clear notice that age was at issue. Moreover, Plaintiff's subsequent allegations that he was replaced by Luis Acuna as Canine Officer with responsibility for Plaintiff's canine partner, reveal what EEOC would have discovered in a reasonable investigation, a significantly younger and less experienced officer, were reasonably expected to grow out of the EEOC's investigation. See, *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

4

Appellees' attempt to isolate the narrative portion of the charge from its checked boxes and contextual information defies the Fifth Circuit's instruction that courts must employ a "fact-intensive analysis" looking beyond the "four corners" of the charge. *Pacheco,* 448 F.3d at 789. The purpose of the exhaustion requirement is to give employers notice and allow the EEOC opportunity to investigate and conciliate - not to create technical barriers to substantive claims.

### B. Appellees' Timeliness Argument Is Misplaced

Appellees' contention that Appellant waived opposition to their timeliness argument mischaracterizes both the record and the law. The ADEA claim was timely filed within 90 days of receiving the EEOC right-to-sue letter. That the claim was added in the first amended complaint rather than the original complaint is immaterial, as it clearly arose from the same conduct and circumstances already at issue. Under Federal Rule of Civil Procedure 15(c)(1)(B), the amendment relates back to the original filing date because it arose out of the same "conduct, transaction, or occurrence."

The district court's overly strict interpretation of the relation back doctrine contradicts the Fifth Circuit's liberal approach to Rule 15(c). See *FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994); *Galvan v. Bexar County* 785 F.2d 1298, 1305

(5th Cir. 1986) (noting that the doctrine of relation back under Rule 15(c) is to be "liberally applied"). *Galvan* further states that:

> "As long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint, there will be no bar to amendment; even new defendants and new theories of recovery will be allowed." *Galvan,* 785 F.2d at 1305, quoting *Williams v. United States,* 405 F.2d 234, 236-37 (5th Cir. 1968).

Appellees were on notice of the relevant facts surrounding Appellant's termination from the original complaint, including his age and the circumstances of his replacement. The addition of the ADEA claim did not introduce new operative facts but simply provided an additional legal theory based on the same factual scenario already presented. Therefore, Appellees' arguments must fail.

## C. The ADEA Claim Was Adequately Pleaded

Appellees' suggestion that the claim was inadequately pleaded fails. The Second Amended Complaint alleges each element required for an ADEA claim: (1) Appellant was over 40; (2) he was qualified for his position with 19 years of experience; (3) he suffered an adverse employment action through termination; and (4) he was replaced by a significantly younger, less qualified individual. Appellant's incorporation of the findings of fact by the SOAH administrative law judge based on the administrative trial of Appellant's appeal plead material facts which support both Appellant's arguments that the County's attempt to justify its termination and

General Discharge of Appellant were pretextual, and the substantive due process claim against Constable Trevino individually of arbitrariness. These allegations, combined with the claim that Constable Trevino harbors prejudices against middle-aged men, more than satisfy federal pleading standards.

## II.    1983 Claims Against Constable Trevino

### A. Appellant Properly Alleged a Protected Property Interest

Appellees' contention that Appellant failed to plead a protected property interest fundamentally misreads both the Second Amended Complaint and controlling precedent. While Texas generally follows the employment-at-will doctrine, the Supreme Court has long recognized that property interests can arise from "mutually explicit understandings" between employer and employee. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). See, (ROA.197 ¶25)

Contrary to Appellees' characterization, the Second Amended Complaint alleges specific facts establishing such an understanding. Constable Trevino and her office created a reasonable expectation of continued employment through: (1) established department policies regarding the termination procedures; (2) written assurances during the investigation process; (3) the requirement that termination be "for cause" as evidenced by the F-5 discharge designation system. IAD Deputy Constable Lieutenant Fernandez had told Appellant on June 27, 2022, the terms of his

7

employment's continuing turned on "**the final report of HPD**" (Emphasis added) (ROA.203 ¶45d), an objective representation relied on by Appellant—a *Sindermann* property interest—Appellant should have been reinstated to his employment at Precinct 6. When Nickolette's claims against Appellant were deemed unfounded by "the final report of HPD" and the Harris County District Attorney dismissed or declined to prosecute Appellant (ROA.192), the matter of whether Appellant's employment with the County would continue or not, should have been settled, but it wasn't. Thwarted in ridding herself of Appellant by means of Nickolette's discredited claims, Constable Trevino didn't explain the change of reasons to terminate Appellant, but she changed her firing reason nevertheless and fired Appellant because he had allegedly not followed the policies on notification of Fernandez or the late IAD Deputy Constable Sgt. Melissa Mendietta of certain events…allegations discounted by SOAH Judge Bakker in her findings. (ROA.195)

Appellees' attempt to dismiss the post-termination F-5 procedures as irrelevant ignores that these procedures demonstrate the existence of a system where termination requires cause - exactly the type of "mutually explicit understanding" that creates a protected property interest in the status of "Honorable Discharge" from employment absent good cause to show why a Honorable Discharge should not be separated at a lesser status, either General Discharge or Dishonorable Discharge under *Perry*.

## B. The Procedural Due Process Violation Was Clearly Established

Appellees' qualified immunity argument fails because the procedural due process violation here involved clearly established rights. Once a property interest exists, the requirements of pre-termination notice and opportunity to respond are unambiguously established. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Constable Trevino violated these clearly established rights by: (1) Changing the grounds for termination without notice; (2) Denying Appellant opportunity to respond to the actual grounds for dismissal; (3) Imposing a career-ending "General Discharge" designation without proper cause.

The arbitrary shift in justification for termination and imposition of a "General Discharge" without supporting evidence - later reversed through administrative proceedings - demonstrates exactly the type of arbitrary government conduct that the Due Process Clause prohibits.

## C. Substantive Due Process Was Clearly Established

Furthermore, the substantive due process rights were also clearly established. the Supreme Court has long recognized that property interests can arise from "mutually explicit understandings" between an employer and employee. *Perry,* 408 U.S. at 601 (1972).

## D. Qualified Immunity Does Not Shield Constable Trevino's Actions

Qualified immunity does not protect officials who violate clearly established rights of which a reasonable person would have known. Here, no reasonable official could have believed that terminating an employee: (1) Without notice of the actual grounds for termination; (2) Without opportunity to respond to those grounds; (3) Based on allegations later proven false; (4) With a career-ending discharge designation complied with basic due process requirements. The subsequent administrative finding that no policy violations occurred and the change of Appellant's discharge status from "General" to "Honorable" demonstrate the objective unreasonableness of Constable Trevino's actions or at least create a fact issue. See *Patel v. Trevino,* 2022 Tex. App. LEXIS 6494, 40-43 (Tex. App.— Houston [1st Dist.] 2022, no pet).

### E. The Conspiracy Claim is Properly Pleaded

Appellees' argument that a single entity cannot conspire with itself misses the mark. The Second Amended Complaint alleges conspiracy not just within the Constable's office but involving multiple actors across different departments. While employees of a single entity generally cannot conspire among themselves, this rule does not apply when the conspiracy involves actors outside the entity or when individual actors have independent personal stakes in the conspiracy.

### III.     1983 Claims Against Harris County

## A. Municipal Liability Was Properly Pleaded Under Monell

Appellees' argument against municipal liability rests on an overly restrictive reading of Monell and mischaracterizes the allegations in the Second Amended Complaint.

### 1. Policymakers in Harris County, Constable's Office, Precinct 6

It is well settled in Texas that:

> "Harris County is divided into eight precincts, each of which elects its own constable; while the Commissioner's Court funds the salaries of each precinct, the elected constable has unsupervised and final authority to terminate the employment of any deputy who does not conform to department policy. *Harris Cty. v. Nagel*, 349 S.W.3d 769, 793 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("[C]onstable is the *only* official who has supervisory authority over the deputies and is responsible for their official conduct as a matter of state law.") (emphasis added) (citing Tex. Local Gov't Code § 86.011(c) and § 151.001), *cert denied*, 134 S. Ct. 117 (2013). Similarly, the Harris County Commissioner's Court lacks the authority to appoint or terminate deputies in any precinct. *Id.* (citing Tex. Local Gov't Code § 151.002 and § 151.003)." *Harris Cnty. v. Coats* 607 S.W.3d 359, (Tex. App.—Houston [14th Dist.] 2020, no pet.) (Bourliot, J., dissenting from denial of en banc rehearing).

State law is the basis for determining the identities of *Monell* policymakers.

As stated in *Praprotnik*, at page 124:

> "Whether a particular official has 'final policymaking authority' is a question of state law." *St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986)).

The *Praprotnik* court emphasized this principle further on page 124:

> "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id.*

And at page 125:

> "State law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125.

This principle has been consistently followed by lower courts and reaffirmed by the Supreme Court in: *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989); and *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997).

The apparent key to Harris County's argument in this case is *Anderson v. Harris Cnty.*, 98 F.4th 641 (5th Cir. 2024) which they use to argue that Harris County can't be liable under Title 42 USC §1983 since Constable Trevino was not a policymaker for Harris County when she terminated Appellant and separated him from his employment with Harris County with a General Discharge. Harris County gives Anderson *supra* as its authority for a Constable not having policymaking authority for Harris County.

Appellant contends that this Court's view in *Anderson* and the County's view of *Anderson* are erroneous. In *Anderson*, *supra*, this court's opinion stated:

"First, Plaintiffs improperly rely on *Harris County v. Nagel* for its delegation theory. 349 S.W.3d 769 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In *Nagel*, the court held that a constable was a policymaker for the county because the Commissioners Court delegated authority to him. *Id*. at 794" *Anderson,* 98 F.4th at 645.

Appellant disagrees with this honorable court's decision in *Anderson for the following reasons*:

1. "We have defined official policy to be: 'A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority…' " *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985), citing *Webster v. City of Houston,* 735 F.2d 838,  (5th Cir.1984) (en banc).

In *Harris Cnty. v. Nagel*, the 14th Court of Appeals stated,

> "..*Brady v. Fort Bend County,* 145 F.3d 691, 700, 702 (5th Cir.1998) (explaining that **when Texas law allows no other official or governmental entity to exert control over a county elected official's discretion, the elected official is the final policymaker in that area of the county's business**). **Only the constable has supervisory authority over the deputy constables; the commissioners court's only authority over the deputies is budgetary.** *See Renken v. Harris County,* 808 S.W.2d 222, 225–26 (Tex.App.-Houston [14th Dist.] 1991, no writ)" *Harris Cnty. v. Nagel*, 349 S.W.3d 769, 793 (Tex. App. 2011).

There is no case support for the proposition that there is more than one type of municipal policymaker for "section 1983" matters or for "non-section 1983"

13

matters, but as stated in *Pembauer* and *Praprotnik*, there may be more than one municipal policymaker in the municipality. The case of *Pembauer v. City of Cincinatti states:*

> "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law. However, like other governmental entities, municipalities often spread policymaking authority among various officers and official bodies. **As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances**." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Furthermore, *Praprotnik* states:

> "We are also aware that there will be cases in which policymaking responsibility is shared among more than one official or body." *Praprotnik,* 485 U.S. at 126.

2. A Texas "Constable is the *only* official who has supervisory authority over the deputies and is responsible for their official conduct as a matter of state law." (emphasis added) (citing Tex. Local Gov't Code § 86.011(c) and § 151.001). *Coats,* 607 S.W.3d at 394, (Bourliot, J., dissenting from denial of en banc rehearing). In Texas Similarly, the Harris County Commissioner's Court lacks the authority to appoint or terminate deputies in any precinct. *Id.* (citing Tex. Local Gov't Code § 151.002 and § 151.003).

3. Commissioner's Court cannot override or restrict powers granted by state statute. Tex. Const. Art. V. § 18.

4. The issue here is not Constable Trevino's ability to make policy for the way Deputy Constables of other precincts may behave or not, but whether Deputy Constables of Precinct 6 can be supervised and terminated *only* by Constable Trevino, and that she is the final County authority for supervision and termination of her Precinct's Deputies.

5. The legislature's broad grant of authority cannot be restricted by local regulation.

In *Nagel,* Harris County constables by an agreement amongst themselves and with the Commissioner's Court (which managed the federal/state Mental Health Block Grant) reduced the number of Constable Precincts in Harris County which *would*, not *could* serve mental health warrants in Harris County. The point in the 2011 opinion by the Fourteenth Court of Appeals in *Nagel* relied on by this court bears out the truth of *Praprotnik* by stating that there may be more than one policymaker for a governmental entity. In 2020, Justices on the Fourteenth Court in *Harris Cnty. v. Coats* referred to *Nagel* in dissent, pointing out that *Nagel* had dealt with a discrete agreement amongst Harris County's Constables, whose budgets *only were controlled by County Commissioner Court, all Constables by*

*state law were authorized to hire Deputies to fill available slots funded by Harris*

*County, and all deputies are able to become qualified for certification by Texas*

*Commission for Law Enforcement ("TCOLE")* to be certified as Mental Health

Officers pursuant to TCOLE Rules 221.1 and 221.11. *Coats,* 607 S.W.3d at 394,

(Bourliot, J., dissenting from denial of en banc rehearing).

As a segue, the federal government ("SAMHSA") and the state government

fund Harris County's Mental Health initiatives. While all Constables can serve

process county wide by state law, again the legislature says all Deputy Constables

can serve mental health warrants, but for efficiency the eight Harris County

Constables and Commissioner's Court agreed in the 1970s to voluntarily channel

the service of Mental Health Warrants in Harris County per Texas Health & Safety

Code, Chapter 573 to Constable Precinct 1. That self-limiting agreement of duties

by the eight Harris County Constables did not change state law that all Constables

in Texas may serve Mental Health Warrants if certified by TECOLE Rule 221.1 and

221.11. *Nagel* did not limit the state law recited by Justice Bourliot in *Coats*, supra,

and had nothing to do with the state prohibiting Commissioner's Court from

interfering with the Constable's supervision of her Deputy Constables or final

county authority to terminate a Deputy Constable from the county payroll. Under

Texas law, state Policymaker for supervising and terminating deputies remained for

the County with the elected Constable of the Precinct, here Silvia Trevino. *Anderson* was a federal rewriting of state law.

Appellant respectively suggests this Court construed *Nagel* in a way which did not comport with the verbiage of Texas' legislated law, which ignored Texas law on the County wide authority for discrete elected Constables to remain at the top of the County's administrative structure in supervising and terminating Deputy Constables employed by that discrete Constables precinct. This court's reading of *Nagel* may be supportive of this court's decision in *Anderson*, but this court's reading of *Nagel* seems to ignore the teachings of the Supreme Court as to the source of the law creating policymakers and Texas law that the elected Constable in Texas is the policymaker over her own Deputies in supervisory or termination decisions. The 2017 case of *Bowden* argued *uphill* on *Nagel,* missing the point that the actions of Constable Nick Saleme in involuntarily separating Deputies employed by Wiggins, his Republican predecessor in office because Saleme thought they had supported Wiggins in his reelection bid when challenged by Saleme. This court in *Bowden* stated, "Because the constable was not a policymaker and the plaintiffs sued only the County rather than the constable in his individual capacity, we held that the former deputies' § 1983 claim must fail." *Bowden v. Jefferson Cnty.*, 676 Fed. Appx. 251, 255 (5th Cir. 2017).

## 2. Syllogistic Reasoning

Using syllogistic reasoning, it is possible to show a logical inconsistency in this Court's previous approach. As established above, according to the Supreme Court, the determination of who is a policymaker *must* be based on state law. *See, Praprotnik*, 485 U.S. at 125; *Pembaur*, 475 U.S. at 483; *Jett*, 491 U.S. 701; *McMillian*, 520 U.S. 781. Furthermore, Texas state law, according to Tex. Local Gov't Code § 86.011(c) and § 151.001-003, establishes that: Constables have exclusive supervisory authority over their deputies; only constables can hire and fire deputies in their precinct; and the Commissioner's Court's authority is limited to budgetary matters. Therefore, the logical conclusion is that constables must be policymakers for their precincts in personnel matters under state law.

However, this Court's logic in *Anderson* looks primarily to federal cases (*Luman*) rather than state law; misinterprets *Nagel* by focusing on the mental health warrant agreement rather than the underlying state law authority; and creates a distinction between types of policymaking authority not found in state law.

Therefore, a logical fallacy is created, where the Fifth Circuit uses a federal case interpretation to override direct state law determinations of policymaking authority. This directly the Supreme Court's mandate in *Praprotnik* that whether an

18

official had policymaking authority is a question of state law. *Praprotnik,* 485 U.S. at 124.

### 3. Constable Trevino's Policymaking Authority

As described above, Appellees' reliance on *Anderson v. Harris County* is misplaced. While *Anderson* held that a constable is not automatically a final policymaker for all county employment matters, it did not foreclose a constable's policymaking authority within their precinct. Here, Constable Trevino exercised final policymaking authority specifically within Precinct 6, as demonstrated through her unilateral authority to make personnel decisions, her role in establishing and implementing disciplinary procedures, and the State Administrative Law Judge's finding that she was the policymaker for personnel matters in her office. Moreover, the record shows a complete lack of meaningful review of her employment decisions by other county officials.

### 4. Official Policy or Custom

Contrary to Appellees' characterization, the Second Amended Complaint alleges specific policies and customs that led to constitutional violations. These include the arbitrary application of disciplinary procedures, the practice of changing termination justifications without notice, the custom of imposing "General Discharge" designations without proper cause, and the systematic failure to provide pre-

termination due process. These allegations go beyond mere conclusory statements and detail specific practices that "have the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

### B. The Failure to Train Claim is Adequately Supported

Appellees' attack on the failure to train claim ignores key allegations in the Second Amended Complaint. In *City of Canton v. Harris*, the Supreme Court held that a failure to train can serve as the basis for § 1983 liability where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The Second Amended Complaint meets this standard by alleging systematic failures in due process procedures and identifying specific deficiencies in training regarding constitutional requirements for termination. This failure to train on fundamental due process requirements in termination procedures, where the consequences include career-ending discharge designations, presents exactly the type of situation where the inadequacy is likely to result in constitutional violations.

### C. Harris County's Direct Involvement

Appellees attempt to distance the County from Constable Trevino's actions fails because the County adopted and ratified her decisions, maintained the systems and procedures she used, failed to provide oversight or review of her personnel decisions, and created policies and procedures that enabled the constitutional violations. The fact that the County later changed Appellant's discharge status through administrative proceedings demonstrates both its authority over and involvement in these matters.

### D. Moving Force

The Second Amended Complaint adequately alleges that County policies were the "moving force" behind the constitutional violations. The connection between the policies and the harm is direct and obvious: the County's delegation of unreviewable authority to Constable Trevino, combined with inadequate training and oversight, directly led to the arbitrary termination and improper discharge designation that violated Appellant's constitutional rights.

## IV.   Appellees' Waiver Arguments Are Without Merit

### A. No Waiver of ADEA Timeliness Arguments

Appellees incorrectly assert that Appellant waived opposition to their timeliness argument for the ADEA claim. The record shows that the timeliness of the ADEA

claim was inherently addressed in the context of the relation-back doctrine under Federal Rule of Civil Procedure 15(c). When Appellant added the ADEA claim in his First Amended Complaint, the amendment related back to the original filing because it arose from the same conduct and occurrences already at issue.

## B. The Section 1983 Claims Were Preserved

Appellees' contention that Appellant failed to preserve arguments regarding the Section 1983 claims mischaracterizes the record. In response to the motion to dismiss, Appellant specifically addressed the property interest requirement, the due process violations, and municipal liability under Monell.

## C. The Right to Amend Was Preserved

Contrary to Appellees' assertion, Appellant properly preserved his request for leave to amend. In response to the motions to dismiss, Appellant specifically requested the opportunity to amend if the court found the pleadings deficient. This request was consistent with the liberal amendment standard under Federal Rule of Civil Procedure 15(a) and this Circuit's preference for deciding cases on their merits rather than technical pleading deficiencies.

## D. The Issues Were Adequately Briefed on Appeal

Finally, Appellees' suggestion that certain arguments were waived for inadequate briefing on appeal lacks merit. Appellant's opening brief thoroughly addressed each

issue necessary for reversal, supported by relevant authority and record citations. While Appellees may disagree with the merits of these arguments, they were more than adequately presented for this Court's review.

The fundamental purpose of the waiver doctrine is to ensure that district courts have the first opportunity to address issues and that arguments are properly presented for appellate review. These purposes have been fully served here. Appellant raised his substantive arguments, properly preserved them for appeal, and adequately briefed them before this Court. None of Appellees' technical waiver arguments should prevent this Court from reaching the merits of this appeal.

## CONCLUSION

For the foregoing reasons, the district court's dismissal of Appellant's claims should be reversed. First, Appellant's ADEA claim was properly exhausted through his EEOC charge, which provided clear notice of age discrimination and contained sufficient information to trigger a reasonable investigation. The claim was timely filed within 90 days of receiving the right-to-sue letter, and the amendment adding the ADEA claim properly related back to the original complaint under Rule 15(c).

Second, the Section 1983 claims against Constable Trevino were adequately pleaded and supported by specific factual allegations establishing both procedural and substantive due process violations. A protected property interest arose from

mutually explicit understandings regarding continued employment and termination procedures. Constable Trevino violated clearly established constitutional rights by changing the grounds for termination without notice, denying Appellant the opportunity to respond, and imposing a career-ending "General Discharge" designation without proper cause – actions that qualified immunity does not shield.

Third, municipal liability against Harris County was properly alleged under Monell. Texas state law establishes that Constable Trevino was the final policymaker for personnel matters in Precinct 6, contrary to this Court's analysis in Anderson. The Second Amended Complaint identified specific policies, customs, and practices that led to constitutional violations, including inadequate training on fundamental due process requirements and the systematic failure to provide proper pre-termination procedures. The County's involvement is further demonstrated by its authority to later modify Appellant's discharge status through administrative proceedings.

None of Appellees' technical or procedural arguments regarding waiver prevent this Court from reaching the merits, as all issues were properly preserved below and adequately briefed on appeal.

For these reasons and those stated in Appellant's opening brief, this Court should reverse the district court's dismissal and remand for further proceedings to allow Appellant's claims to be heard on their merits.

SUBMITTED BY:
S/Laurence Wade Watts
Watts & Company Lawyers, Limited
5002 Sienna Parkway
P.O. Box 2214
Missouri City, TX 77459

# CERTIFICATE OF SERVICE

I certify that on December 19, 2024, the foregoing document was forwarded via PACER on today's date to the following parties/counsel:

Harris County, Appellee

Sylvia Trevino, Appellee

Melissa Martin, Counsel for Appellee

Susana Sosa, Counsel for Appellee

S/Laurence Wade Watts

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R32.1: this document contains 4446 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface Microsoft Word in 14-point Times New Roman Font.

S/Laurence Wade Watts